Good morning, Your Honors. May it please the Court, I'm Daniel Shanfield on behalf of the petitioner Tedros Kidanemariam-Tewelde. There are two key issues I'd like to address today. The first is, under the new Delgado decision, whether the agency properly determined that my client was subject to the particularly serious crime bar for withholding of removal under the Refugee Convention and under the Convention Against Torture. The second issue I'd like to discuss is whether the agency properly denied my client Convention Against Torture protection under deferral of removal under substantial evidence, turning to the first issue, particularly serious crime. Under the new Delgado decision, this Court has jurisdiction to review determinations by the agency as to whether an individual seeking withholding of removal is subject to the particularly serious crime bar. In this case, the agency committed two errors. First, it determined, without citing any standards, that Mr. Kidanemariam's conviction under California Penal Code 243.4a constituted a particularly serious crime. Secondly, the immigration judge erred in determining that the offense as committed was a particularly serious crime. With regard to the first point, the Board of Immigration Appeals cites not a standard, a substantive standard as to whether an offense constitutes a particularly serious crime, but a methodology, a step-by-step way to review the offense, but does not cite any substantive standard as to what renders that offense a particularly serious crime. So all we have is a methodology, and we don't really understand why exactly the Board determined that the offense constituted a particularly serious crime. At page four of the record, which is the Board of Immigration Appeals decision, it states, when the offense is not an aggravated felony or did not receive a sentence of five years, we examine the nature of the conviction, the type of sentence imposed, and the circumstances underlying facts of the conviction. But that's what we do for every offense, regardless of whether it's a particularly serious crime, an aggravated felony, a crime involving moral turpitude. And I think this gets to Judge Reinhart's dissent, not dissent, but concurrence in his concerns about whether a DUI constitutes a particularly serious crime. It's because the Board has utterly failed to provide substantive standards, both in general and in this particular case. So we're left with nothing to judge the Board's decision as to whether this offense, whether California Penal Code Section 243.4a is by its nature a particularly serious crime. Now, turning to the immigration judge's decision, the immigration judge determined that the offense as committed was a particularly serious crime. But the judge's decision is not based on substantial evidence. It only weighs certain evidence and disregards other evidence entirely. The immigration judge stated in his decision that Mr. Kadhanamaryam testified credibly. Mr. Kadhanamaryam also testified that his tryst with the alleged victim was consensual. That was his testimony. What do we have to contradict that testimony? We have the conviction, but the conviction was based on a no-contest plea. And under this Court's precedent in Del Van Wyn, a no-contest plea does not establish the actual facts of the crime as committed. It only establishes the conviction. So that cannot serve as a basis to contradict Mr. Kadhanamaryam's testimony. Secondly... So does that mean if you plead no-contest that you can't go behind anything? Your Honor, I haven't stated that. And under NAM... It sounds like if you plead no-contest, you come in and say you committed no crime, and you can't look behind the conviction to find out what really happened. I regret for being misunderstood. What I'm saying is that the fact of the no-contest plea,  that it was consensual, may not, as a factual balancing, contradict testimony. Because this Court has stated that a no-contest plea does not establish facts. It only establishes convictions. Now, you can look at other evidence under the Board's precedent in NAM. And the other evidence one could look at is the police report. The police report is an out-of-court statement, not corroborated by testimony, unsworn, containing internal contradictions, and violates the agency's own regulations under 8 CFR Section 1287.6, which goes to certification of official records. These documents were not certified.  And the immigration judge's failure to credit that testimony is reversible error, as his determination is not supported by substantial evidence. Counsel, I have a question for you, Judge Gould. Yes, Your Honor. Here's my question. If the relationship was consensual, would that have been a defense to the statutory charge? Under California penal – are you asking, Your Honor, whether under California Penal Code Section 243.4a, is it – is the consensual – whether it being consensual is an affirmative defense? Is that your question, Your Honor? Well, what I'm trying to figure out is whether the conviction depleted no contest to the statutory charge. Whether the elements of that conviction are inconsistent with his testimony. Well, I think that whether it's consensual does not directly deal with the specific elements of the offense. The specific elements of the offense require unlawful restraint. So one could – one could fairly infer that consent implies that there was no unlawful restraint, but I don't know if consent is actually determinative. So I wish I had a better answer, but that's all I have. That's fine. Thank you. So with regard to whether this offense – I'm sorry. With regard to whether the – Mr. Kadanamarian has established that he merits protection under the Convention Against Torture under deferral of removal, the immigration judge and the board committed fundamental errors and their decisions were not based on substantial evidence. The immigration judge failed to consider wide swaths of the evidentiary record. And under Aguilar-Ramos, where the immigration judge fails to consider relevant evidence, and even overcomes that evidence, but fails to cite relevant evidence, that is reversible error. So the immigration judge was fixated on respondents' testimony about what happened to him up until the age of 10. And the immigration judge is also fixated on the period of hostilities between Eritrea and Ethiopia from 1998 to 2000 and the deportations, the mutual deportations between both countries which took place. But the immigration judge fails to consider Ethiopia's human rights record with regard to Eritreans and other ethnic and national minorities post-2000. The immigration judge also fails to consider the impact on Eritreans, on the Eritrean community and specifically Eritrean government – I'm sorry, Eritrean national independence activists during – in the course of that deportation and the post-2000 impact. So the immigration judge states that there is no war now. But war does not – the absence of war does not mean the breakout of peace. The absence of war also does not mean the conditions for Eritreans in Ethiopia have improved. It does not mean that there has been reconciliation between Ethiopians and Eritreans. Any absence in the record of human rights violations specifically against Eritreans after the conclusion of open hostilities in 2000 does not speak to their safety. It speaks to the success of the Ethiopian government's ethnic cleansing campaign against Eritreans in that either the leadership of the Eritrean community was deported and massive numbers of Eritreans were deported, leaving that community leaderless, depleted and impoverished. So there is nothing – there is no basis for them to continue further to complain because they have seen the results of defending their national rights. And that has been torture, expulsions, grave human rights violations. So the – It's a long history. I'm sorry? It's a long history. Your Honor, it is a long history, but we may not even look back that far. We can look to the contemporary period. Now, one thing I want to address is that the immigration judge completely misstood who Mr. Kadanamariam is. Mr. Kadanamariam is not your, for lack of a better term, run-of-the-mill Eritrean. He established through his testimony and through the declaration submitted his family background as EPLF activists who fought and defended the national – or defended the rights of the Eritrean community in Eritrea and outside of Eritrea. So the immigration judge misperceives who he is, and by virtue of that, fails in his further steps to determine whether his particular – Kadanamariam's particular characteristics place him at specific risk of being tortured. Garbage in, garbage out. By failing at first to figure out who Kadanamariam is, the rest of his decision ends up being, for lack of a – well, to be charitable, erroneous. Mr. Kadanamariam's background and his family's background as EPLF activists place him in specific danger because the country conditions – contemporary country conditions record – such as the Oromo and the Ogadins are facing horrendous human rights violations by virtue of setting out their ethnic and national rights to self-determination. So those leaders are being persecuted and facing torture. It gives the ineluctable inference that the Ethiopian government is unable to tolerate such types of self-determination. And it views anyone associated with those groups as an unacceptable risk, a germ in the body politic that must be expelled. And that germ, they thought they had expelled from 1998 to 2000 based on their laser-like focus on driving out the Eritrean activist leadership. And then one shows up in their country in 2011. It is not built on a chain of supposition that such an individual faces a more likely than not chance of being tortured because other similarly situated individuals who have a background in ethnic and national activism similarly face unspeakable torture. The immigration judge cited that we don't know what will happen to Mr. Kadanamariam. This further carries forth the immigration judge's confusion about what this case is about. We don't need to establish what will happen to Tedros Kadanamariam. We only need to establish that it's more likely than not what will happen. And I don't think that this is a throwaway line by the judge. I think as the decision degenerates, he is considering the case in terms of what will happen to Mr. Kadanamariam. And I think that language speaks volumes about his perspective. Okay. So you have about a minute left if you want to save some time. Yes. The immigration judge and the government also say that it's a supposition as to how he would be detected and what interrogation techniques would be used against him. But that is clearly set forth in the Asylum Office's 2002 question and answer. It talks about the cabalet system, where in the neighborhoods there is a neighborhood association. And between 1998 and 2000, these neighborhood associations were the key actor in denouncing Eritreans in the midst of Ethiopians. So upon settlement of Mr. Kadanamariam in any neighborhood, assuming he survives the Air Force, but upon settlement in any neighborhood, he would be detected. Thank you. And that concludes my remarks. Thank you. May it please the Court, John Holt for the Attorney General. The government proved by clear, convincing and unequivocal evidence the petitioner was convicted of the felony sexual battery in violation of California Penal Code 243.4a, a crime of violence, therefore an aggravated felony, therefore he was removable and he was ineligible for asylum. The government also proved that he was convicted of a particular serious crime, therefore he was ineligible for withholding or removal. The immigration judge did not abuse his discretion denying the continuance, the second request for continuance.  because petitioner failed to establish that he was prima facie eligible to adjust status. And finally, the evidence does not compel the conclusion that petitioner carried his burden at the proceeding to show that he would face torture if he was repatriated to his own country, and that was Ethiopia and then eventually returned to Eritrea. The petitioner in this case was 36 years old and he committed oral sodomy on an 18-year-old young girl. The 18-year-old was a relative. It was his father's sister. It was the godchild of his mother. Petitioner admitted that. He was convicted. He was sentenced to serve a year in jail. He served eight months in jail. And in response to your question, Judge Gould, the offense included the element that the touching was against the will. So the element of the fact of consent would in fact be an affirmative defense to be pled by the petitioner if he had such a defense in which he did not plead in this particular case. But appellant counsel said, you know, there's no evidence of that. His client testified that it was consensual and that's the end of it. Well, what is significant, Your Honor, is that there was a conviction under the statute and the conviction establishes a particular offense in this particular case. The Lisby case establishes that a violation of 243A4, excuse me, 243.4A, is indeed a crime of violence and the Robinson case. Consent is an element. I beg your pardon? Is non-consent an element? As I just read to you, Your Honor, it's against the will of the person. The touching has to be against the will of the person. And what effect does no contest mean on that conviction? The effect of no contest is that the conviction is established and it is admissible for immigration purposes and indeed it's admissible in California law and later on. Even if he were to later have his record expunged after serving rehabilitation, which indeed in this particular case Petitioner attempted to do. At page 505 of the record there's a thing by Mr. Wright, the defense counsel, seeking that particular relief. He did not receive that particular relief, but he sought it. Then he still could not contest ultimately his conviction for later purposes, even if he were to get that post-conviction relief to have the record expunged. In this particular case, the... Excuse me. I was going to say, just as one judge, I'm pretty well persuaded there's an aggravated felony and a particularly serious crime rendering him ineligible for asylum and withholding. But the part of the case that bothers me is the cat issues because with his Eritrean background, there's no question he'd have rough sledding if first sent to Ethiopia. And if you could address the probability of torture issue, I would appreciate it. In the previous argument, you addressed the appropriate standard to be addressed on the cat issue. It was in the credibility case, but it's still the same standard. It's the compelling evidence standard, the substantial evidence standard. And the court asked in its order, directed in its order, that we address the implication of Delgado. Delgado is helpful particularly to enlighten exactly what the standard is with regard to the cat claim. The second aspect of Delgado is Delgado specifically addressed that they would apply the compelling evidence test to determine whether or not the petitioner had indeed a valid cat deferral claim. Petitioner in his argument today, again, conflates the burden that he had at trial to show by clear and convincing evidence with the burden that he now has before this court. And Judge Gould focused on earlier, and that is the compelling evidence standard. We would submit that the evidence does not compel the conclusion that the board and the immigration judge were incorrect. Now, petitioner asserted that the immigration judge gave short consideration to the evidence that was established. Indeed, pages 82 through 86 of the record established that the immigration judge was plenary here and painstaking in taking his approach and evaluating all the evidence with regard to the cat claim. Importantly, the scope of review here is both the board decision and the decision of the immigration judge because the board specifically adopted and affirmed the immigration judge's decision, including the cat deferral claim. Now, regarding the merits of the cat deferral claim, let's look at what the immigration judge addressed. First of all, he did talk about the fact that the petitioner had been in Eritrea or Ethiopia when he was age 10. He had left at age 10. He considered that he was a member of the EPLF, the Liberation Front, and he understood all of the background and detailed the petitioner's testimony regarding his involvement in fighting communism in Ethiopia. What's significant is that the communist regime no longer rules in Ethiopia. There's been a revolution, and another government is established there. Ethiopia and Eritrea are now independent countries after a long conflict between 1998 to the year 2000. Now, the immigration judge focused on what evidence would be of torture in this particular country, and the judge said that there was conjecture and speculation here because the petitioner was saying that there may be a new war in the future, and the judge certainly appreciated that war is always around the country in these areas, but there was no evidence that war was imminent. He secondly talked about possible deportation from Ethiopia to Eritrea, and, in fact, the Red Cross, the records show that the Red Cross has repatriated, in 2007, 1,379 Eritreans to Ethiopia, so we have Eritreans being repatriated to Ethiopia, so the judge's concerns about being deported were really very valid, and there was no evidence. The judge also talked about the probabilities of persecution or interrogation, and, overall, the judge discounted those as mere speculation. He also addressed the possible identity of the petitioner as an Eritrean. He noticed that he was an Ethiopian by citizenship, an Ethiopian by birth. The fact that he had Eritrean parents, even the fact that he spoke a certain dialect, may not necessarily invite him. The bottom line, petitioner testified that he had not been in touch with anybody from the government. He knew the government. He didn't know anyone in the government that was pursuing him or targeting him, so in light of all that evidence, Judge Gould, we believe that the evidence does not compel a conclusion contrary to that of the immigration judge. Thank you. Are there any further questions? Thank you. Unless there are other questions, thank you, Your Honor. We submit that the petition should be denied. Are there any further questions of the petitioner? Thank you. I have none. Thank you. The matter just argued is submitted for decision, and that concludes the court's calendar for this morning. The court stands adjourned.
judges: McCuskey, Schroeder, Gould